Good morning, Judge Smith, Judge Fletcher, Judge Gwynne, Nancy Kendall, on behalf of the petitioner Carlos Corona. Thank you, first of all, for keeping this matter, this important matter on calendar for oral argument. We appreciate it. Madam Clerk, I'd like to reserve two minutes for rebuttal. First, I'd like to give a brief overview of what I plan to argue today. In the trial court's quest for expediency, it did not even merely come close. We can't even come close to getting at the benefit of the doubt in this case. It was not merely objectively reasonable in looking at the facts of this case. It completely got – did not get everything just wrong. It was objectively reasonable in looking at the facts in light of the evidence presented in the State court. First, it failed miserably in not asking George O. any follow-up questions in voir dire, just relying completely on his accent alone, in spite of the fact that – Well, there is a case, isn't there, ma'am, about whether you need to ask questions? It seems to me that that case is pretty straightforward, that one doesn't need to ask questions. It says the State's failure to engage in a meaningful voir dire on a subject the State alleges it is concerned about is evidence. That doesn't seem to me to be where we're necessarily going. Well, I think it is in this case, considering that the judge did not – first of all, the judge sua sponte gave a reason for this, and the judge did not give a reason in a vacuum, and that's where the problem comes in in this case. The judge did not simply base his sua sponte reason on the accent alone. What the judge said was, based on the evidence to come into this case, he did not think that George O. was an appropriate juror. And that was the basis – that's the whole basis of the problem in the case. He said, based on the evidence that was to come in, he did not think he was an appropriate juror. Well, do you – you do believe, don't you, that the record is pretty complete, that both the judge and the prosecutor had difficulty understanding George? Well, they had difficulty understanding him. However, they did not conduct any follow-up questions. And that alone is – I submit that that alone is insufficient without any follow-up questions. Nobody else had any – excuse me. You don't make an ineffective assistance of counsel claim, though. No, I do not. No, I do not. Your trial counsel failed to – I agree that there's not much of a record on this, but it doesn't appear like the trial counsel either made a proffer or made questions that would have laid a better foundation for the argument you have. Well, the trial – Mr. Corona's trial counsel asked that there be follow-up questions, and the trial court denied that request. She asked that they follow up on that, and the trial count – and the trial court denied that request. She said all it would take is simple follow-up questions. Let me show prejudice in this case. You've got the person who ultimately replaced the juror. Is there anything in that person's background that suggests that they would – they were necessarily less favorable to your client than the juror that was excused? That's not – that's not the question. That's not the issue. The issue here is whether or not George O. was struck because of race, not whether or not the juror who replaced him was struck for – or was kept because he was not a minority. That's not the question under Batson. The question under Batson was whether George O. was struck because he was a minority, not whether the juror who replaced him was sufficiently acceptable to the prosecutor. And in fact, the prosecutor struck George O. because he was a minority, not for any other reason. Well, just – well, just a minute. The prosecutor was given a chance to talk about why that – why he struck George O., and he had – he said he had trouble understanding George. The English was not his first language, and given the terms of the Mexican mafia slang, that he thought somebody needed to have English as a first language in order to be able to specifically do this. Now, there was one part of this I didn't have a very good feeling about, didn't have a good feeling about, George. I'd say you'd have him dead set on that one. I wouldn't have allowed that, but I'm just – I guess I'm having trouble when I know that limited proficiency may impact comprehension of expert testimony. It may be a problem, and given that this is, in fact, a decision the judge had to make on these issues, I guess I'm again worried that this is not one I should jump up and say, okay, this is the end. I'd ask you to point out any place in the record where it shows that George O. did not understand English, that English was not his first language, that they determined that. They did not determine that. They just assumed that because of his accent. I mean, would you strike Judge Kaczynski because of his accent? Would you strike – I might strike him. Well, that was a bad one. I mean, if you're going to talk about him, you've lost. But what about Albert Einstein? And let's take the defense attorney in this case. She, too, had an accent. Now, maybe the judge and the prosecutor were used to her accent, and she pointed out her accent. But maybe the jury was not. Did anybody question her about her accent? No. Well, the problem that I have again is this. If I look at Miller L., which is the same one I was looking at when I determined whether this was a sham or whether it wasn't, the general question that I have is that absence of discriminatory intent is a factual issue. It's not supposed to be overturned unless objectionably unreasonable in light of the defendant in the state court proceeding. But the judge – And here we are with a factual determination where the judge was on point, and you're asking me then to suggest that this was clearly erroneous. But the judge was going on the facts of the wrong case. The judge was going on the facts of the original case that was upwards of 50 defendants. This was not the complex case he thought it was. There was no sale of cars. There was no upwards of 50 defendants. There were no people coming over. There was not all this complex – there was no complex evidence. This was – yes, there was Mexican mafia evidence, but it was not all the evidence that this judge thought it was. This judge was thinking it was the original case. You're making more of a direct appeal argument than you are an habeas argument. But I'm not, Your Honor, because everything he said that he based this on, if you read the record carefully, that the judge said, he said, based on the evidence, I believe that this – He's having to infer a discriminatory intent. Absolutely it is, because what the prosecutor said after the judge gave his sua sponte reason was the prosecutor said, I echo the court's reasons on that. And that is exactly the kind of warning that Johnson – the kind of sua sponte reason that Johnson warned against, that the prosecutor then comes in and goes, oh, I echo the judge's reasons on that, but what the trial judge said to the prosecutor before he asked the prosecutor to speak was, do you have your trial notes with you? And the prosecutor said, yes, I do. And he said, and I echo the court's reasons on that. And he was wrong. The trial judge was going on the wrong set of facts. This defendant had been severed out of that big case. And it was a simple case. There was expert testimony that was going to help every single juror, not beyond what every other juror needed. This was not the complex case that the judge and prosecutor were acting on. It was a very simple case with expert testimony that was not beyond what any other juror needed. Did they ask – You're about to eliminate even your rebuttal time here. Let me ask you a couple of questions. Oh, my gosh. I didn't get to – You're down to 56. You didn't say anything about Edmondo. I'm understanding that's waived, right? Edmondo is simply because they said they were seated next to each other. And that was not – But you didn't even argue that in your brief, did you? I did. I said that that was just a completely ridiculous reason. That was just thrown in there for another protectable reason. And with Brady, may I make a brief, quick argument about Brady? Wasn't that the better argument? Brady? Yes, it was. Yes, Brady is absolutely the better argument. We're talking about the other juror. No. We're talking about Edmondo. Oh, Edmondo is the better argument? No, I don't think Edmondo is. I do not think it is. And I – You've got 13 seconds. Anything you want to hit really fast? Can I – is there anything you had to ask about Brady? I don't. Did you – I would like to hear the Brady argument, because it's a question of whether the – what would be said would have been material and whether it would have been prejudicial. And I think there are real concerns about all of those. Okay. Do you understand the due diligence? I also have a couple minutes to tell us about that. Oh, we're glad to. Okay. Thank you very much. I'll move. The judge intervened. He got a chance. Okay. Okay. Thank you. Thank you very much. As far as the Brady argument is concerned, there were several issues that the trial court miscompletely never even addressed. As far as the Brady issue is concerned. Let me ask you a little bit, since you want to talk about Brady, about the timeline. It seems to me on December the 15th of 2004, you asked for the address and phone number. You were given the East 10th Street number, and nobody knew anything about the move at that time, correct? Right. And that on January 7th, 2005, you hired a private investigator to try to find Delfina, and didn't find her. Right. And it wasn't anything that anybody did any different. Went for an address and phone number, hired a private investigator. And the first time anybody knew anything different was when the state did something in June 9th, 2005. When they went out to subpoena the husband and found they'd moved to Arizona. That's not correct, sir. Well, I'll be fair. I don't find anything about you trying to find out or anything in this record about trying to find Delfina, other than a private investigator going by the house a couple of times or doing whatever they had to do. It's in the investigator's report that the trial judge missed.  Well, the government got note of the defense investigator. Now, when did the government get notice that they'd moved? After the. . . Was it June 9th? June 9th. After the defense investigator knew from a database search. So June 9th. You have a trial then, what, June 15th? Yes, but the database. . . How long did it take you? How long were you told by the Arizona people it would take to effectuate a subpoena? One month. So you're already out of time. So if they don't get notice until June 9th, you can't get a subpoena served in Arizona and get the attendance of the person. But that misses the entire point of my argument. The argument is that the trial judge skipped over what was in the report. I guess it misses the point of the argument if you don't look at the standard of review. No, Your Honor, that's not correct. What is the standard of review? The standard of review here was whether or not the defense conducted due diligence. And the defense did because the trial judge missed what was in the report. He said that the defense attorney did not conduct due diligence by only going to the residents ten times. That was insufficient. He did not do enough. He. . . You have to show prejudice under Brady. I understand. But first, he. . . Or do you have to show. . . In the report, he missed the due diligence. He did a database search that was in the report. He did not answer his questions. I think that's important. Okay. How does it change anything if. . . But you can't get to the prejudice without understanding that he conducted due diligence. I think you're likely wrong. But let's assume that the trial court made an error and he finds that. . . But nonetheless, the government gets it. And he finds that you've done significant. . . Okay. . . . investigation.  I just ask you to look at the report, the bottom, the last entry on the report. I would ask that you look that it was in the report that the trial judge saw that he did. . . The database search was in the report that the trial judge saw at the mid-trial hearing. As far as prejudice is concerned, I will say that I will. . . I'll just tell you the points that the trial judge missed as far as what the trial judge did not do, showing prejudice, were the inconsistent statements made by the victim, Guyton. He said first that the Guyton or that Corona, my client, took his cell phone. And then he said that the cell phone was missing the day of the shooting and it was missing right after two other people left the house. What does that have to do with Brady? Because it's showing prejudice. It's showing his the fact that he's not credible. Well, but the bottom line is the prejudice question he's asking is pretty straightforward. It is, hey, they didn't know until June 9 your trial happened and it wouldn't have been any way, even if they had told you on June 9, there wouldn't have been any way for you to get that person to the trial on the trial date because it took you 30 days. You got the information on June 13 and, therefore, it was the same problem. You made the same motion, but you couldn't get the person there in any event. But inadvertence is still, whether it was inadvertent or not, they still had a duty to disclose. Under Adler's, they had a duty to disclose. Do you agree that you lose then? No. Absolutely not. No. I'm sorry. No. Don't you lose unless you upset the, you make some showing that it was unconstitutional for the state trial judge to deny the continuance? Yes. And it was unconstitutional for the judge to deny the continuance. That's my argument. In what case, what federal Supreme Court case are you going to cite me for that? Adler's. Is that your best case? Yes. All right. Yes. Thank you. Any questions you had because you got us into this, Judge Fletcher? No. I think we should hear from opposing counsel now. I'm having a little problem because there's an echo that's coming in. So if Kwame or somebody could work on that while we're hearing the next argument. Carol, will you go get Kwame? Oh, okay. Thank you. Thank you. I don't know whether you're getting an echo, but your name's reconnected. Well, there could have been, but we didn't hear it. It was mainly sometimes it was because two or three people, at least two, were talking at the same time. Go ahead, ma'am. Good morning, Your Honors. Deputy Attorney General Jennifer Jadovitz for Respondent. In regards to Mr. Cronin's claim in Claim 1 regarding the vaccine issue, in this particular situation it remains Respondent's position that the trial court properly denied defense counsel's motion based on the proper determination of the facts in this case. The trial judge and the prosecutor both had issues in understanding George O in this particular matter, and that was self-evident in the record. And based on this record and as indicated by the court's comments in this case, we must give significant deference to the trial court's findings in this matter. That was noted in the district court's order, and therefore, as the district court pointed out, even if fair-minded jurors could disagree on that issue, that is not grounds for relief to that claim. And as, Your Honor, Judge Smith, you pointed out, no follow-up questions were necessary in this situation and may have been even inappropriate at this time. So with respect to that claim, unless the court has any questions for Respondent, we would submit on the briefing and ask the court to deny that claim. Go ahead with any other. With respect to the Brady issue. To me, that's one you better address. Judge Fletcher gave her extra time. That means you better come up with something. With respect to the Brady issue, if I recall correctly, Your Honor, Judge Fletcher, you were concerned with materiality and prejudice as to that claim. It would be Respondent's position with respect to Ms. Delfina Miller's proffered testimony. It was not material in this case. And her proffered testimony in relation to her reports to the officer and the investigator, at best it appears that Mr. Corona is relying on the fact that she identified a different color car in that situation. And it's Respondent's position that's wholly irrelevant to the circumstances in this case and whether or not Mr. Corona was guilty of attempted murder based on his positive identification of Mr. Corona as the shooter. Not only did he positively identify him to the police in his hospital interview, but the record indicates that Mr. Corona positively identified him as the shooter at trial. Therefore, that was up to the jury to give him a credibility determination. And based on the verdict, they did in fact find him credible. In the event that the court disagrees that the evidence was not material, certainly Mr. Corona has failed for the same reasons to establish that he suffered any prejudice. It is not reasonable that he would have obtained a better verdict had this evidence not been admitted at trial. Once again, based on those factors, unless the court has any further questions, we would submit on the briefing and once again ask the court to deny the Brady claim as well. As a matter of fact, it seems to me on the materiality claim, what we're trying to determine is who is the individual who did the shooting. So it seems to me that it may not be credible, but it seems to me that it's material and it's easier then to tell us whether he was prejudiced or male or not. With regard to the identity of the shooter, what we have here is a situation based on the record that the victim positively twice identified Mr. Corona as the shooter. If I recall correctly, the reports that Ms. Delfina gave to the first reporting officer and the investigator is that she saw an unidentified man enter the car. We have no idea who that man is. Weighing that evidence against the victim's positive identification of Mr. Corona as the shooter, then it doesn't overcome that fact and therefore, once again, as the state courts have found and as the district court found true as well, it's simply not material in this case. And because it's not material for the same reasons, there's no prejudice. Was there a constitutional violation when the state trial judge failed to give a continuance? No, Your Honor. In that situation based on the timeline as previously outlined by the court in this situation, it's clear that both defense counsel and the state had the same opportunity to find that information and it just so happens that the state found it right before trial. But there's no indication that defense counsel couldn't have used the same means. The question I'm really asking is did the trial judge commit a constitutional error when he failed to give a continuance? I'm not talking about the Brady issue so much now as the due process issue. And the answer, once again, would be no. And that is because as defense counsel's only evidence regarding the continuance is that it would have delayed the trial for at least a month no matter what time he would have found that information, whether it be June 9th or whether on June 13th. And a one-month delay in this particular circumstance would have been unreasonable. And I would point out, too, that in preparing for oral argument and preparing a timeline with respect to what actions were taken by the defense counsel's investigation and defense finding out this information, it's curious. I don't know if it's dispositive of the issue, but it's curious that if this witness was so important and vital to the defense, why would defense counsel call ready not having this witness readily available? Something for the court to possibly consider. I would ask you another question. It seems to me that on the denial of the motion to continue, it was based on California law. Wouldn't you say the judge made that determination based on California law? That would be a fair assessment of the record. Well, then why is that a habeas issue? It doesn't seem to me that if it's based on California law, we have any business in it, that California law is based on its law and that's not a habeas appeal. You're absolutely correct, Your Honor. Anything else? Unless the court has any questions, we would submit. Thank you. All right. Well, she didn't even get down to six of her minutes and you took four extra, so I think we're through. I mean, I got four extra. You think I have a soft heart? All right, one minute. I'll be very brief. As difficult as that is for me. Okay. As far as the issue again, even if it's California law, the due diligence was met because the investigator did a database search at the time of the mid-trial hearing. It was in the report. And the trial judge missed it. It was in the report. He did a database search. You seem to have missed the point. The point he made was we don't sit as an appellate court for California law issues. Due diligence was done at the time of the mid-trial hearing. He missed it. He did conduct a due diligence. He missed it. But the bottom line is that's California law, and it's California law upon which California courts have already passed. And I don't know of any United States Supreme Court president that suggests that I ought to get involved in telling California's Supreme Court what to do with their own law. But he got California law wrong. And I just want to move on to the mid-trial hearing. Well, just because he got California law wrong doesn't mean it's a bad deal. That's their job, not mine. Prejudice and materiality. The one thing I'd like to point out is on the two-car issue. Your minute's over. Why would somebody be running past? Why would somebody be running away from where the shooting was? It doesn't make any sense. That's all I'd like to say is you don't run away from the vehicle that you're already in. Thank you for your arguments, both of you. Corona v. Al Major, 0956717 is submitted.
judges: Gwin, Fletcher B. , Smith N. R.